USCA1 Opinion

 

 July 5, 1995 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  __________________ No. 94-1950 KARIN CLARKE, Plaintiff, Appellant, v. KENTUCKY FRIED CHICKEN OF CALIFORNIA, INC., Defendant, Appellee.  ____________________ ERRATA SHEET The opinion of this Court issued on June 14, 1995, is amended as follows: Cover sheet, under listing of counsel, add: Nan Myerson ____________ Evans, Bon Tempo & Evans and David A. Robinson on brief of amicus _____ _________________ _________________ curiae National Employment Lawyers Association. [Appendix not attached. Please contact Clerk's Office for  opinion with appendix.] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1950 KARIN CLARKE, Plaintiff, Appellant, v. KENTUCKY FRIED CHICKEN OF CALIFORNIA, INC., Defendant, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________  ____________________ Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________  ____________________ Kevin G. Powers, with whom Robert S. Mantell and Law _______________ _________________ ___ Office of Kevin G. Powers were on brief for appellant. _________________________ Jeffrey G. Huvelle, with whom Melissa Cole, _____________________ _____________ Covington & Burling, Terry Philip Segal, Brenda R. _____________________ ____________________ __________ Sharton and Segal & Feinberg were on brief for appellee. _______ ________________ Nan Myerson Evans, Bon Tempo & Evans and David A. _________________ __________________ _________ Robinson on brief of amicus curiae National Employment ________ Lawyers Association.  ____________________ June 14, 1995  ____________________ CYR, Circuit Judge. Plaintiff Karin Clarke appeals CYR, Circuit Judge. _____________ from a district court judgment dismissing her sexual harassment claim against her former employer, Kentucky Fried Chicken of California, Inc. ("KFC"), for failure to exhaust administrative remedies, and dismissing her related state-law tort claims on preemption grounds. We affirm the judgment. I I BACKGROUND BACKGROUND __________ While employed by defendant KFC at a fast-food restau- rant in Saugus, Massachusetts, Clarke was sexually harassed, physically assaulted, and subjected to attempted rape by other KFC employees. Clarke quit her job and initiated the present lawsuit in Massachusetts Superior Court, alleging sexual harass- ment, negligent and reckless infliction of emotional distress, and negligent hiring, retention and supervision.  After removing the case to federal district court, see ___ 28 U.S.C. 1441, 1446; see also id. 1332 (diversity jurisdic- ___ ____ ___ tion), KFC filed a motion to dismiss all claims, see Fed. R. Civ. ___ P. 12(b)(6), contending that the sexual harassment claim under Mass. Gen. L. Ann. ch. 214, 1C, was barred for failure to exhaust mandatory administrative remedies before the Massachu- setts Commission Against Discrimination ("MCAD"), see Mass. Gen. ___ L. ch. 151B, 5 (prescribing six-month limitation period for MCAD claims), 9 (making section 5 procedure "exclusive"), and that Clarke's common law tort claims were preempted by the Massachusetts Workers' Compensation Act, see Mass. Gen. L. ch. ___ 2 152, 1 et seq. (Supp. 1994). The motion to dismiss was granted __ ___ in its entirety. Clarke v. Kentucky Fried Chicken of California, ______ _____________________________________ Inc., No. 94-11101-EFH (D. Mass. Aug. 17, 1994).1  ____ II II DISCUSSION DISCUSSION __________ A. Sexual Harassment A. Sexual Harassment _________________ Clarke first contends that the district court should not have dismissed her sexual harassment claim, because the "jurisdictional" clause in Mass. Gen. L. Ann. ch. 214, 1C (1986) ("The superior court shall have jurisdiction in equity to _____ ____ ____________ enforce this right and to award damages.") evinces a clear legislative intent to except such claims from compliance with the otherwise mandatory MCAD exhaustion requirement imposed on other employment-based discrimination claims under Massachusetts law. In order to place her contention in context, we examine pertinent case law and statutes, see infra APPENDIX at pp. (i)-(iii).  ___ _____ 1. Fair Employment Practices Act, Mass. Gen. L. Ann. ch. 1. Fair Employment Practices Act, Mass. Gen. L. Ann. ch. _______________________________________________________ 151B 151B ____ In 1946 the Massachusetts Legislature enacted the Fair Employment Practices Act ("FEPA"), Mass. Gen. L. Ann. ch. 151B,  1 et seq., which contained a comprehensive list of unlawful __ ___ discriminatory acts by covered Massachusetts employers against  ____________________ 1We review Rule 12(b)(6) dismissals de novo, accepting all __ ____ well-pleaded allegations. Vartanian v. Monsanto Co., 14 F.3d _________ ____________ 697, 700 (1st Cir. 1994).  3 their employees.2 See id. 4; Katz v. MCAD, 312 N.E.2d 182, ___ ___ ____ ____ 187 (Mass. 1974) (noting that FEPA was enacted "to implement the right to equal treatment guaranteed to all citizens by the constitutions of the United States and the Commonwealth").3 Gender-based discrimination was included in the section four listing as an unlawful employment practice. See Mass. Gen. L. ___ Ann. ch. 151B, 4(1); see also College-Town v. MCAD, 508 N.E.2d ___ ____ ____________ ____ 587 (Mass. 1987) (interpreting FEPA 4(1) as encompassing sexual harassment by employers and supervisory employees). FEPA claimants must file their MCAD claims within six months after the alleged discriminatory act, or forfeit any entitlement to judicial review. See Mass. Gen. L. Ann. ch. 151B, ___ 5, 9 ("As to acts declared unlawful in section four, the __ __ ____ ________ ________ __ _______ ____ procedure provided in [chapter 151B, 5] shall, while pending, be exclusive; and the final determination therein shall exclude _________ any other action, civil or criminal, based on the same grievance of the individual concerned.") (emphasis added); see also Acker- ___ ____ ______ son v. Dennison Mfg. Co., 624 F. Supp. 1148, 1158 (D. Mass. 1986) ___ _________________ (holding that compliance with six-month limitation period becomes unwaivable "jurisdictional" prerequisite to civil suit). As to section four administrative claims which are adjudicated by the MCAD within ninety days from filing, either ___________  ____________________ 2A covered FEPA "employer" is one who has more than five ____ employees. Id. 1(5). ___ 3While FEPA primarily targets employment-based discrimina- __________ tion, it also proscribes a variety of other discriminatory conduct in housing, real estate, credit extension, insurance and banking not directly relevant to the appeal.  4 the claimant or the respondent may obtain limited review on _______ petition to the superior court, Mass. Gen. L. Ann. ch. 151B, 6, followed by an appeal of right to the Supreme Judicial Court ("SJC").4 Unless the MCAD fails to act within ninety days or grants an express dispensation, the claimant may not bypass the administrative claims process by filing a civil action for damages or injunctive relief directly with either the superior ________ court or the probate court. Id. 9. ___ In 1986, the Massachusetts Legislature presaging the SJC's College-Town decision, supra amended FEPA by explicitly ____________ _____ including "sexual harassment" within the comprehensive list of employer acts proscribed under section 4. See 1986 Mass. Acts ___ 588 (codified at Mass. Gen. L. Ann. ch. 151B, 1(18) (definition of "sexual harassment"), 4(16A)). At the same time, the Legislature amended Chapter 214, a separate statutory provision vesting the superior court with original equity jurisdiction as follows: "A person shall have the right to be free from sexual harassment, as defined in [FEPA 1(18)]. The superior court shall have jurisdiction in equity to enforce this right and to _____ ____ ____________ award damages." 1986 Mass. Acts 588 (codified at Mass. Gen. L. Ann. ch. 214, 1C) (emphasis added) [hereinafter: "Section 1C"].  ____________________ 4The superior court may set aside or modify an MCAD order only if it finds, according "due weight to the [MCAD's] experi- ence, technical competence, and specialized knowledge," that the order was (1) unconstitutional, (2) beyond the MCAD's jurisdic- tion or statutory authority; (3) based upon an error of law; (4) issued pursuant to an unlawful procedure; (5) unsupported by substantial evidence; or (6) arbitrary and capricious. See Mass. ___ Gen. L. Ann. ch. 30A, 14 (1995). 5 2. The ERA and Charland 2. The ERA and Charland ____________________ Enacted in 1989, the Equal Rights Act ("ERA"), Mass. Gen. L. Ann. ch. 93, 102, 103, proscribes, inter alia, gender- _____ ____ based discrimination in connection with the execution and en- ___ forcement of contracts and provides that "[a] person whose rights _________ __ _________ . . . have been violated may commence a civil action for injunc- tive and other appropriate equitable relief, including the award of compensatory and exemplary damages. Said civil action shall be instituted . . . in the superior court . . . ." Id. 102(b). ___ Later, in Charland v. Muzi Motors, Inc., 631 N.E.2d 555 ________ _________________ (Mass. 1994), the SJC held that ERA section 102(b) does not ___ excuse claimants from compliance with the comprehensive adminis- ______ trative claims procedure established in FEPA section 9, supra. _____ Rather, in enacting the ERA, the Legislature presumably was aware that FEPA section 9 had long mandated MCAD exhaustion for all ___ employment-based discrimination claims alleging "unlawful prac- ________ _____ tice[s]" listed in FEPA section 4. Charland, 631 N.E.2d at 558 _______ ________ (noting "legislative intent to subject all discrimination claims ___ ______________ ______ to administrative scrutiny") (emphasis added). And since Char- land had alleged a breach of his employment contract, arising out __________ ________ of his wrongful discharge based on age and national origin an employment-based claim actionable under FEPA, see Mass. Gen. L. __________ _____ ____ ___ Ann. ch. 151B, 4(1) (barring discharge from employment because of "national origin" or "age") the SJC held that Charland's superior court action must be dismissed for failure to file a timely administrative claim with the MCAD. Charland, 631 N.E.2d ________ 6 at 559; see also Agin v. Federal White Cement, Inc., 632 N.E.2d ___ ____ ____ ___________________________ 1197, 1199 (Mass. 1994) (same). 3. Standard of Review 3. Standard of Review __________________ Where, as here, a district court dismissal turns upon an interpretation of state law, we conduct plenary review. See ___ Salve Regina College v. Russell, 499 U.S. 225, 239-40 (1991).5 _____________________ _______ The issue before us on appeal is whether Section 1C, unlike ERA sections 102 and 103, excepts the instant employment-based sexual harassment claim from compliance with the administrative exhaus- tion requirement in FEPA section 9. Clarke argues that Charland ________ is not controlling, because it resolved only the legislative ____ correlation between FEPA and the ERA, which would mean that ___ ___ ___ Charland's reference to "the legislative intent to subject all ________ ___ discrimination claims to administrative scrutiny" was mere ______________ ______ dictum. KFC responds that the Charland rationale likewise bars ________ _________ Clarke's unexhausted Section 1C claim -- a gender-based employ- ment discrimination claim explicitly listed in FEPA section 4(16A) as an unlawful act.  4. Section 1C 4. Section 1C __________ Clarke would distinguish Section 1C from ERA sections  ____________________ 5Although Clarke belatedly urges certification to the SJC, "[w]e are rarely receptive to . . . requests for certification newly asserted on appeal." See Nieves v. University of Puerto ___ ______ ____________________ Rico, 7 F.3d 270, 278 (1st Cir. 1993); see also Fischer v. Bar ____ ___ ____ _______ ___ Harbor Banking & Trust Co., 857 F.2d 4, 8 (1st Cir. 1988), cert. _________________________ ____ denied, 489 U.S. 1018 (1989). Nor will we resort to certifica- ______ tion unless the issue presented is sufficiently unsettled under _________ state law that we could not essay a "reasonably clear" prediction with adequate confidence. See Porter v. Nutter, 913 F.2d 37, 41 ___ ______ ______ n.4 (1st Cir. 1990). 7 102 and 103 on the ground that it evinces a clear legislative intent to create two parallel remedial paths for redressing ________ sexual harassment claims one administrative, one judicial. Unlike the ERA, which became law some fifty years after FEPA, Section 1C was enacted at the same time the Legislature amended __ ___ ____ ____ FEPA section 4 to cover sexual harassment claims. Consequently, Clarke argues, unless Section 1C is interpreted as establishing a parallel judicial path that bypasses the MCAD administrative remedy, Section 1C becomes surplusage. See Casa Loma, Inc. v. ___ ________________ Alcoholic Beverages Control Comm'n, 385 N.E.2d 976, 978 (Mass. ___________________________________ 1979) ("It is a common tenet of statutory construction that,  wherever possible, no provision of a legislative enactment should be treated as superfluous."). We agree with Clarke that Charland ________ is not directly controlling, since it did not consider the unique language and legislative history of Section 1C. Nevertheless, absent a definitive SJC ruling, we may look to "analogous decisions, considered dicta, scholarly works, __________ _____ and any other reliable data tending convincingly to show how the [SJC] would decide the issue at hand, taking into account the broad policies and trends so evinced." Michelin Tires (Canada) _______________________ Ltd. v. First Nat'l Bank, 666 F.2d 673, 682 (1st Cir. 1981) ___ _________________ (emphasis added); see also Gibson v. City of Cranston, 37 F.3d ___ ____ ______ _________________ 731, 736 (1st Cir. 1994).6 Charland categorically states that a ________  ____________________ 6Clarke points to an unpublished superior court opinion entered after oral argument in this case, see Burman v. Boch ___ ______ ____ Oldsmobile, Inc., No. 92-02690 (Mass. Sup. Ct. Apr. 11, 1995), ________________ which held Charland inapposite to sexual harassment claims. Even ________ assuming it were proper to consider the unreported decision, see ___ 8 claimant alleging an unlawful discriminatory act listed in FEPA ______ section 4 must comply with the MCAD administrative process, ____ absent clear evidence that the Legislature carved out an excep- tion. Moreover, the listing of unlawful acts in section 4 is so comprehensive that the SJC has yet to identify an exception. See ___ Charland, 631 N.E.2d at 558 (citing with approval Mouradian v. ________ _________ General Elec. Co., 503 N.E.2d 1318 (Mass. App. Ct. 1987) (Massa- __________________ chusetts Civil Rights Act claimants must first comply with FEPA's MCAD procedure)).  The language of 1986 Mass. Acts 588 amending the FEPA section 4 listing and adding new Section 1C, see supra p. 5 ___ _____ does not dictate the interpretation urged by Clarke, since it does not specify at what point in the sexual-harassment-claim process original superior court jurisdiction vests. Under the Charland rationale, once employment-based sexual harassment ________ claims were added to the FEPA section 4 listing by the Legisla- _____ ture, the MCAD claim-filing procedure mandated by FEPA section 9 ______ presumptively became the exclusive procedural path for initiating _________ __________ all such claims against "employers." After the MCAD renders a final decision, of course, jurisdiction to review its decision ______ would lie in the appropriate superior court. See supra pp. 4-5. ___ _____ In some instances, however, administrative claims may not be acted upon within ninety days by the MCAD; alternatively, the  ____________________ U.S. Ct. of App. 1st Cir. Rule 14, Burman contains no developed ______ analysis and no discussion of the relevant statutory provisions or legislative history. See id. slip op. at 8 n.5 ("[T]his Court ___ ___ views the Charland holding as specific, not extending to G.L. c. ________ 214, 1C.").  9 MCAD may permit the claimant to proceed directly with a civil action in a judicial forum.  Thus, like its counterpart provision, FEPA section 9, Mass. Gen. L. Ann. ch. 151B, 9 (vesting superior, probate, and housing courts with original jurisdiction of FEPA claims), Section 1C serves an essential function by vesting in the superior court (as distinguished from the SJC, for example) exclusive original jurisdiction to entertain such administrative- ly exhausted but unadjudicated sexual harassment claims.7 _________ _____________ Therefore, much like ERA sections 102(b) and 103(b), which provide that claimants "may commence a civil action for injunc- tive and other appropriate equitable relief . . . in the superior court" without indicating when such a civil action may be com- ____ menced, the mere fact that Section 1C designates which court _____ _____ shall have original jurisdiction over exhausted but unadjudi- _________ _________ cated MCAD claims does not mean that the designated judicial _____ forum may assert jurisdiction ab initio, i.e., before (or in the __ ______ ____ ______  ____________________ 7Chapter 214, 1, recognizes that the superior courts and the SJC are endowed, concurrently, with the requisite general power possessed by courts in equity to fashion appropriate remedies in the exercise of their traditional equity jurisdic- tion. Chapter 214, 2, on the other hand, vests the SJC with "exclusive [original] jurisdiction of all civil actions in which equitable relief [authorized by statute] is sought," unless the __ _______ ______ ___ statute expressly provides that another court shall have exclu- _______ _________ ________ ____ _______ _____ _____ ____ ______ sive or concurrent original jurisdiction over the statutory ____ __ __________ ________ ____________ ____ ___ _________ claims. Thus, contrary to Clarke's contention, the bare refer- ______ ence to superior court "jurisdiction" in Section 1C may have been intended merely to overcome the automatic "default" mechanism in Section 2 which would otherwise vest the SJC with exclusive _________ original jurisdiction over all Section 1C claims for equitable relief and to designate which other court (i.e., superior _____ _____ _____ ____ court) possesses jurisdiction once the Section 1C claimant has met the MCAD-exhaustion requirements imposed by FEPA section 9. 10 absence of) a timely MCAD claim. Neither party cites to the legislative history relating to Section 1C, though it appears fairly illuminating. The legislative bill approved by the House Committee on Commerce and Labor (H.5732) represented a compromise melded from eight competing Senate and House versions relating to _____ sexual harassment in employment and education. Two of these predecessor versions provided as follows: "A person shall have the right to be free from sexual harassment. . . . The superior court shall have jurisdiction in equity to enforce this right and to award damages. The filing of a complaint under chapter 151B ___ ______ __ _ _________ _____ _______ ____ shall not be a prerequisite to filing a complaint under this _____ ___ __ _ ____________ __ ______ _ _________ _____ ____ section in superior court." H.3136 (sponsor, B. Gray, Framing- _______ __ ________ _____ ham); see also H.488 (Saggese, Winthrop) (emphasis added). It is ___ ____ noteworthy that the only pertinent deletion before Section 1C ____ became law was the italicized language from H.3136 and H.488 quoted supra. See Russello v. United States, 464 U.S. 16, 23-24 _____ ___ ________ _____________ (1983) (noting that deletions of limiting language from predeces- sor bills normally presumed intentional); State of Rhode Island ______________________ v. Narragansett Indian Tribe, 19 F.3d 685, 700 (1st Cir.) (same), _________________________ cert. denied, 115 S. Ct. 298 (1994).  ____ ______ Clarke argues that Section 1C is unlike ERA sections 102 and 103, which encompass claims for employment-based discrim- __________ ination listed in FEPA section 4 as well as sundry non-employ- ___________ ment-based discrimination claims which might not be listed in ____ ___ FEPA. Thus, the ERA enactment may be seen as serving an indepen- dent function even after Charland. That is, though all ERA ________ 11 employment-based claims of a type listed in FEPA section 4 would __________ be subject to FEPA's administrative exhaustion requirement, see ___ Charland, 631 N.E.2d at 558-59, non-employment-based ERA claims ________ ______________ ___ not listed in FEPA section 4 (if any) might be initiated directly in the superior court without administrative exhaustion. By contrast, Section 1C encompasses only sexual harassment claims ____ which are employment-based, compare Mass. Gen. L. Ann. ch. 151B, __________ _______ 1(18) (defining "sexual harassment" in terms of "employment decisions," "work performance," and "work environment") with ____ Mass. Gen. L. Ann. ch. 214, 1C (prohibiting harassment "as defined in chapter [151B]"), and all employment-based gender __________ discrimination claims already fall within FEPA section 4, and, consequently, come within the mandatory administrative exhaustion provision. Clarke reasons, therefore, that unless Section 1C is interpreted as providing employment-based sexual harassment claimants an MCAD bypass into superior court, its enactment was redundant and superfluous. See Casa Loma, Inc., 385 N.E.2d at ___ _______________ 978 (noting that, where possible, statutes ought not be inter- preted so as to render any provision superfluous). But see supra ___ ___ _____ note 7 (investing superior court with jurisdiction over all exhausted Section 1C claims, as opposed to superior, probate, and housing courts designated in FEPA section 9). On the other hand, KFC points out correctly in our view that the Legislature may well have intended that Section 1C make all employment-based sexual harassment unlawful in ___ __________ Massachusetts, without regard to the number of employees working 12 for the particular employer, whereas other forms of employment- _____ _____ __ ___________ based discrimination would be covered by FEPA only if practiced _____ ______________ by employers who hire more than five persons. See supra note 2. ___ _____ This interpretation is substantiated by the fact that Section 1C is not tied into FEPA's definition of "employer," but only to ___ ____ FEPA's definition of "sexual harassment." Although Clarke counters that the Legislature could have achieved the same result simply by amending the FEPA definition of "employer" to accommo- date this exception, we are not persuaded-- nor aware of any authority-- that the amendatory technique she suggests was the only one open to the Legislature.  Clarke further contends that it would be incongruous to require only the employees of large-scale employers to comply with the MCAD administrative claims process, and not employees of small-scale employers, since such an interpretation would contra- vene the Charland holding that all discrimination claims are ________ ___ subject to the exhaustion requirement. This contention is demonstrably flawed as well. Charland simply held that MCAD ________ exhaustion is required if the claim alleges an unlawful act listed in FEPA section 4. And discriminatory conduct by small- ______ scale employers is not listed in section 4. See Mass. Gen. L. _____ ___ ___ Ann. ch. 151B, 4(16A) (unlawful "[f]or an employer, personally __ ________ or through its agents, to sexually harass any employee"); see ___ also supra note 2. Absent ambiguity in the statutory language, ____ _____ we think it inappropriate to second-guess the Legislature's clear language establishing broadened protection for victims of sexual 13 harassment. Finally, Clarke argues that the Legislature singled out all sexual harassment claims from other types of employ- _____ ment-based discrimination claims under FEPA because sexual ______________ harassment normally warrants more urgent remedial action and, by affording sexual harassment victims direct access to the superior court, Section 1C would enable more immediate equitable relief. Her contention is unavailing for two reasons. First, Clarke reserved this argument for her reply brief on appeal, thereby denying KFC an opportunity to respond. See VanHaaren v. State Farm Mut. Auto. Ins. Co., 989 F.2d 1, 7 ___ _________ _______________________________ n.6 (1st Cir. 1993). Second, even if it were not waived, the claim is meritless since FEPA already provides the very remedial mechanisms Clarke would have us read into Section 1C. See Mass. ___ Gen. L. Ann. ch. 151B, 5 (MCAD commissioner "may also file a ____ ____________ petition in equity in the superior court . . . seeking appropri- ate injunctive relief against such respondent . . . ."); 9 ("An __ aggrieved person may also seek temporary injunctive relief in the _________ ______ superior . . . court . . . at any time to prevent irreparable injury during the pendency of or prior to the filing of a com- plaint with the [MCAD].") (emphasis added). For the foregoing reasons, therefore, we conclude that it is reasonably likely that the SJC would extend its Charland ________ rationale to Section 1C, thereby preserving the comprehensive procedural framework established by the Legislature in FEPA section 9. Consequently, the district court judgment dismissing 14 the sexual harassment claim for failure to exhaust administrative remedies under the MCAD must be affirmed. B. Common Law Tort Claims8 B. Common Law Tort Claims ______________________ Clarke contends that the district court erred in ruling that the three remaining common law claims alleging negligence in hiring, supervising and retaining the offending KFC employees were preempted by the Massachusetts Workers' Compensation Act, Mass. Gen. L. Ann. ch. 152, 24. We briefly reprise the legislative history relating to recent amendments to the workers' compensation statute.  From the start, section 24 of the Massachusetts wor- kers' compensation statute included a comprehensive preemption provision precluding injured workers from instituting tort actions "in respect to an [employment-related] injury that is ______ compensable [through the payment of disability benefits] under ___________ this chapter." Mass. Gen. L. Ann. ch. 152, 24 (emphasis added).9 Until 1985, employment-induced emotional disabilities _________  ____________________ 8The failure to file a claim with the MCAD did not bar the common law claims. See Felinske v. New Eng. Teamsters & Trucking ___ ________ _____________________________ Indus. Pension Fund, 855 F. Supp. 474 (D. Mass. 1994) (citing ___________________ Melley v. Gillette Corp., 475 N.E.2d 252 (Mass. 1985)). However, ______ ______________ Clarke has not appealed the dismissal of the common law claims alleging intentional tortfeasance. 9Massachusetts workers may avoid section 24 preemption by expressly reserving their common law rights at the time they are hired. Id. Clarke made no such reservation. ___ 15 were considered fully "compensable" injuries under the workers' compensation statute, without regard to whether the disability resulted from employer negligence. See Foley v. Polaroid Corp., ___ _____ ______________ 413 N.E.2d 711, 714-15 (Mass. 1980).  Clarke concedes that her negligence-based claims against KFC allege employment-induced emotional injury and, thus, _________ would have been preempted under the pre-1985 workers' compensa- ___ tion statute. In 1985, however, the SJC held that employment- related emotional injuries likewise were "compensable" under the workers' compensation statute, even though the emotional injury ____ ______ resulted from such bona fide employer decisions as layoffs and interdepartmental transfers. Kelly's Case, 477 N.E.2d 582, 584- _____________ 85 (Mass. 1985) (noting that disallowance of workers' compensa- tion for such emotional injuries is a policy decision for the Legislature, not the courts).  The ensuing uproar from the Massachusetts business community over the implications of Kelly's Case prompted the _____________ Legislature to amend the "personal injury" definition in chapter 152 to read: Personal injuries shall include mental or emotional disabilities only where the predom- inant contributing cause of such disability is an event or series of events occurring within any employment. . . . No mental or __ ______ __ emotional disability arising principally out _________ __________ ___________ of a bona fide, personnel action including a ____ _____ _________ ______ _________ transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed ______ to be a personal injury within the meaning of _ ________ ______ this chapter.  See 1985 Mass. Acts 572 ("Workers' Compensation Reform Act"); ___ 16 1986 Mass. Acts 662 (codified at Mass. Gen. L. Ann. ch. 152,  1(7A)). Although ostensibly a pro-employer enactment, serendi- ____________ pitously the 1985 amendment also presented claimants like Clarke with a basis for attempting to circumvent the broad preemption provision in section 24 of the workers' compensation statute. From the beginning, section 24 had preempted tort actions at common law, but only in respect to injuries compensable by ___________ disability benefits under the workers' compensation statute. See ___ Mass. Gen. Laws Ann. ch. 152, 24. After the 1985 amendment, however, emotional injuries caused by an employer's "bona fide [] personnel action[s]" [hereinafter otherwise: "BFPA"]  literally became "noncompensable" under the workers' compensation statute. Consequently, Clarke argues, if it can be established that her emotional injuries were caused by a good faith, albeit ____ _____ negligent, personnel decision on the part of KFC for which she _________ would not be entitled to workers' compensation benefits under chapter 152, amended section 1(7A), see supra p. 16 she would ___ _____ be entitled to redress her negligence-based tort claims in the courts by virtue of the "noncompensability" exception to section 24 preemption. Clarke's argument cannot succeed, however, unless she can demonstrate both that (1) the decision not to screen KFC ____ hirees, nor alter their working conditions to minimize the risk that Clarke be emotionally harmed by sexual harassment, consti- tuted a "bona fide personnel action" within the meaning of amended section 1(7A); and (2) the 1985 Legislature, in rendering ___ 17 all BFPA-induced emotional injuries noncompensable under the workers' compensation statute, intended to deny BFPA claimants like Clarke the right to collect workers' compensation benefits, and, as an offsetting form of relief, to save their common law tort remedies from preemption under section 24. Since Clarke's argument plainly founders on the second prong, we simply assume, arguendo, that the personnel actions at issue qualify as BFPAs ________ under amended section 1(7A). Although there is no SJC decision directly in point, the interpretation Clarke urges was rejected recently by the Mas- sachusetts Appeals Court, in Catalano v. First Essex Sav. Bank, ________ ______________________ 639 N.E.2d 1113 (Mass. App. Ct.), review denied, 644 N.E.2d 225 ______ ______ (1994). The Catalano court noted that the 1985 amendments to the ________ workers' compensation statute were in direct response to an invitation the SJC extended to the Legislature in Kelly's Case: _____________ to "determine, as a matter of public policy, whether one of the costs of doing business in this Commonwealth shall be the compen- sation of those few employees who do suffer emotional disability as a result of being laid off or transferred." Id. at 1115 ___ (quoting Kelly's Case, 477 N.E.2d at 584-85): ____________ It is obvious that the Legislature wished to protect the employer from liability under the [Workers' Compensation] Act for claims aris- ing out of bona fide personnel actions unless motivated by an intent to inflict emotional distress. In those circumstances, it seems unlikely that the Legislature intended to preserve a civil action for claims based on negligent infliction of emotional distress that arise from a bona fide personnel action. To do so would negate . . . the purpose of relieving employers from the financial bur- 18 dens of such claims . . . . Id. at 1116. ___ Clarke correctly points out that the Catalano analysis ________ constitutes dicta because the court dismissed the appeal on an alternate ground. Id. Nevertheless, persuasive, reasoned dicta ___ may provide a valuable guide to statutory interpretation. See ___ Gibson, 37 F.3d at 736 (absent explicit ruling by state's highest ______ court, federal court sitting in diversity may consult "considered dicta") (citing Michelin Tires, 666 F.2d at 682); see also Bank ______________ ___ ____ ____ of New England Old Colony, N.A. v. Clark, 986 F.2d 600, 603 (1st _______________________________ _____ Cir. 1993) (relying on "persuasive" dicta of United States Supreme Court); cf. also Sainz Gonzalez v. Banco de Santander- ___ ____ _______________ ____________________ Puerto Rico, 932 F.2d 999, 1001 (1st Cir. 1991) (declining to ___________ credit dicta unsupported by reasoned analysis); United States v. _____________ Rivera, 872 F.2d 507, 509 (1st Cir.) (same), cert. denied, 493 ______ ____ ______ U.S. 818 (1989). Moreover, the Catalano analysis was prompted by ________ the appeals court's express desire to resolve "the alleged uncertainty and confusion that purportedly exists among the members of the [Massachusetts] bar and public concerning the initiation of legal proceedings involving the claims raised in this appeal," Catalano, 639 N.E.2d at 1115, and the SJC summarily ________ denied review.  The original workers' compensation statute effectively preempted a broad range of civil actions based on employment- related emotional injury, see supra p. 15, and one would expect ___ _____ any significant retreat from this longstanding legislative policy 19 to be heralded with considerably greater clarity than is discern- ible in Mass. Gen. L. Ann. ch. 152, 1(7A). We agree with the appeals court that it would strain credulity and common sense to presume that the Legislature chose to limit employers' collective liability under the workers' compensation scheme, only to expose individual employers to greater liability in common law negli- gence suits based on bona fide personnel actions.  III III CONCLUSION CONCLUSION __________ The grievous sexual harassment claims alleged by appel- lant were entitled to just adjudication in the first instance under the administrative claims process established by Massachu- setts law. As the courts are powerless to reinstate legal remedies foreclosed by failure to comply with a mandatory admin- istrative exhaustion requirement, the district court judgment dismissing the sexual harassment claim must be affirmed. Final- ly, the district court judgment dismissing the related common law tort claims must be affirmed on preemption grounds. The district court judgment is affirmed. The parties The district court judgment is affirmed. The parties ________________________________________ ___________ shall bear their own costs. shall bear their own costs. __________________________ 20 APPENDIX APPENDIX A. Equal Rights Act, Mass. Ann. Laws ch. 93, sec. 102 (1994): A. Equal Rights Act, Mass. Ann. Laws ch. 93, sec. 102 (1994): ________________ Section 102. Equal Rights for All Persons Within Com- monwealth; Enforcement by Civil Action for Equitable Relief; Jurisdiction of Superior Court; Degree of Proof; Damages, Costs and Attorneys' Fees. (a) All persons within the commonwealth, regard- less of sex, race, color, creed or national ori- gin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property . . . .  (b) A person whose rights under the provisions of subsection (a) have been violated may commence a civil action for injunctive and other appropriate equitable relief, including the award of compensa- tory and exemplary damages[] . . . in the superior court . . . .  B. Fair Employment Practices Act, Mass. Ann. Laws ch. 151B, B. Fair Employment Practices Act, Mass. Ann. Laws ch. 151B, _______________________________ sec. 1 (1995): sec. 1 (1995) Section 1. Definitions. As used in this chapter . . . . 5. The term "employer" does not include . . . any employer with fewer than six persons in his employ . . . . . . . . 18. The term "sexual harassment" shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual na- ture . . . (b) . . . [which] have the purpose or effect of unreasonably interfering with an indivi- dual's work performance by creating an intimidat- ing, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment. i Section 4. Unlawful Practices; Certain Records to be Kept; Employer, etc., Not Required to Grant Preferen- tial Treatment to Any Individual or Group.   It shall be an unlawful practice:   1. For an employer, by himself or his agent, because of the race, color, religious creed, na- tional origin, sex, sexual orientation, . . . or ancestry of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification. . . . . . . .  16A. For an employer, personally or through its agents, to sexually harass any employee.   Section 5. Complaints Alleging Unlawful Practice or Violation of Certain Statutes; Proceedings Before Commission; Injunctive Relief; Award of Damages. Any person claiming to be aggrieved by an alleged unlawful practice [listed in section 4] . . . may . . . make, sign and file with the commission a verified complaint in writing . . . . . . . . . . . Before or after a determination of probable cause hereunder such commissioner may also file a petition in equity in the superior court . . . .  Section 6. Judicial Review of Order of Commission; Injunctive Relief. Any complainant, respondent or other person aggrieved by such order of the commission may obtain judicial review thereof . . . in the supe- rior court . . . . Section 9. Chapter Construed Liberally; Inconsistent Laws; Procedure Exclusive; Damages or Injunctive Re- lief. . . . [A]s to acts declared unlawful by sec- tion four, the procedure provided in this chapter shall, while pending, be exclusive; and the final ii determination therein shall exclude any other action, civil or criminal, based on the same grie- vance of the individual concerned. Any person claiming to be aggrieved by a practice made unlawful under this chapter or under chapter one hundred and fifty-one C, or by any other unlawful practice within the jurisdiction of the commission, may, at the expiration of ninety days after the filing of a complaint with the commission, or sooner if a commissioner assents in writing, but not later than three years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief or both in the superior or probate court . . . or in the housing court within whose district the alleged unlawful practice occurred if the unlawful prac- tice involves residential housing. . . . An ag- grieved person may also seek temporary injunctive relief in the superior, housing or probate court within such county at any time to prevent irrepa- rable injury during the pendency of or prior to the filing of a complaint with the commission. . . . C. Equity Jurisdiction Statute, Mass. Ann. Laws ch. 214 (1995) C. Equity Jurisdiction Statute, Mass. Ann. Laws ch. 214 (1995) ___________________________ Section 1. General Equity Jurisdiction, Concurrent. The supreme judicial and superior courts shall have original and concurrent jurisdiction of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction . . . .  Section 1C. Right to be Free From Sexual Harassment. A person shall have the right to be free from sexual harassment, as defined in chapter one hun- dred and fifty-one B and one hundred and fifty-one C. The superior court shall have the jurisdiction in equity to enforce this right and to award dam- ages. Section 2. Statutory Equity Jurisdiction. The supreme judicial court shall have origi- nal and exclusive jurisdiction of all civil ac- tions in which equitable relief is sought cogniza- ble under any statute and not within the jurisdic- iii tion conferred by section one, unless a different provision is made; and the superior court shall have like original and exclusive, or like original and concurrent, jurisdiction only if the statute so provides. iv