CYRIL CHARLAND *vs*. MUZI MOTORS, INC., & another.[1,2]

Norfolk. January 4, 1994. - April 21, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Massachusetts Commission Against Discrimination. Statute*, Construction. *Anti-Discrimination Law*, Termination of employment. *Employment*, Discrimination. *Civil Rights*, Termination of employment.

General Laws c. 151B provides the exclusive remedy for employment discrimination claims not otherwise based on preexisting common law tort principles or constitutional protections, and no independent or alternative claim for alleged employment discrimination may be maintained under G. L. c. 93, §§ 102 and 103 (equal rights act). [582-586]

CIVIL ACTION commenced in the Superior Court Department on February 17, 1993.

The case was heard by *Patrick F. Brady*, J., on a motion to dismiss.

The Supreme Judicial Court granted a request for direct appellate review.

*Paul A. Manoff* for the plaintiff.

*Charles A. Hawkins*, of Georgia, for the defendants.

*Judith Olans Brown & Alan Jay Rom*, for Boston Bar Association, amicus curiae, submitted a brief.

*Scott Harshbarger*, Attorney General, *Richard W. Cole & John A. Capin*, Assistant Attorneys General, for the Attorney General, amicus curiae, submitted a brief.

---

[1]Edward Connors. The plaintiff notes that, on the amended complaint, Connors's name was incorrectly spelled "Corner."

[2]We note with appreciation the amicus briefs submitted by the Attorney General and the Boston Bar Association.

LYNCH, J. This case requires the court to interpret the relationship between G. L. c. 151B (1992 ed.)[3] and G. L. c. 93, §§ 102 and 103 (1992 ed.) (equal rights act).[4] The plaintiff alleges that, on March 22, 1991, he was terminated by the defendant Muzi Motors, Inc., because of his age or national origin in violation of the equal rights act. He concedes that he did not proceed under G. L. c. 151B, because he failed to file a complaint with the Massachusetts Commission Against Discrimination (MCAD) within the six-month period required by G. L. c. 151B, § 5. A judge in the Supe-

---

[3]General Laws c. 151B, §§ 4 (1), 4 (1B), & 4 (5) (1992 ed.), provide: "It shall be an unlawful practice:

"1. For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, sexual orientation . . . or ancestry of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

"1B. For an employer in the private sector, by himself or his agent, because of the age of an individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

"5. For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden or to attempt to do so."

[4]General Laws c. 93, § 102 (a) (1992 ed.), provides: "All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts, to inherit, purchase, to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other."

General Laws c. 93, § 103 (a) (1992 ed.), provides: "Any person within the commonwealth, regardless of handicap or age as defined in chapter one hundred and fifty-one B, shall, with reasonable accommodation, have the same rights as other persons to make and enforce contracts, inherit, purchase, lease, sell, hold and convey real and personal property, sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, including, but not limited to, the rights secured under Article CXIV of the Amendments to the Constitution."

rior Court, reasoning that the equal rights act does not provide a remedy for discriminatory discharge, allowed the defendants' motion to dismiss.[5] We granted the plaintiff's application for direct appellate review and now affirm. We hold that, where G. L. c. 151B is applicable, employees alleging discriminatory conduct by their employer must comply with the administrative requirements of c. 151B and failure to do so precludes actions by employees based on the equal rights act. Therefore, the plaintiff's failure to invoke the protection of G. L. c. 151B required the dismissal of his complaint.

1. *Exclusivity provision of G. L. c. 151B.* The plaintiff contends that the equal rights act provides alternative remedies for employment discrimination in concert with c. 151B. We do not agree. We base our decision on the language of c. 151B, legislative intent, and our precedents interpreting its scope.

Chapter 151B creates an administrative procedure for the enforcement of antidiscrimination statutes of the Commonwealth. See *Black* v. *School Comm. of Malden,* 365 Mass. 197, 202 (1974), *S.C.,* 369 Mass. 657 (1976). As this court has stated, "the clear purpose of G. L. c. 151B is to implement the right to equal treatment guaranteed to all citizens by the constitutions of the United States and the Commonwealth." *Katz* v. *Massachusetts Comm'n Against Discrimination,* 365 Mass. 357, 366 (1974).

"As a starting point for our analysis we assume, as we must, that the Legislature was aware of the existing statutes in enacting [the equal rights act], *Mathewson* v. *Contribu-*

---

[5]The judge based his decision on *Patterson* v. *McLean Credit Union,* 491 U.S. 164 (1989), where the Supreme Court determined that, under 42 U.S.C. § 1981 (1988), the phrase "to make and enforce contracts" did not apply to conduct which occurred after the formation of a contract and which did not interfere with the right to enforce established contract obligations. *Id.* at 176-177, 179-180. Given the *Patterson* decision, the Superior Court judge determined that G. L. c. 93, §§ 102 and 103 do not provide a remedy for a discriminatory discharge. The judge further reasoned that, if the Legislature had "intended to overrule *Patterson,*" it would not have used the identical words that the *Patterson* court had interpreted.

*tory Retirement Appeal Bd.*, 335 Mass. 610, 614 (1957), and that if possible a statute is to be interpreted in harmony with prior enactments to give rise to a consistent body of law. *Everett* v. *Revere*, 344 Mass. 585, 589 (1962)." *Hadley* v. *Amherst*, 372 Mass. 46, 51 (1977). The Legislature is " 'presumed to understand and intend all consequences' of its acts." *Boston Water & Sewer Comm'n* v. *Metropolitan Dist. Comm'n*, 408 Mass. 572, 578 (1990), quoting *Rambert* v. *Commonwealth*, 389 Mass. 771, 774 (1983).

Chapter 151B provides a detailed framework to protect the citizens of the Commonwealth against employment discrimination. It defines terms and prohibited practices and establishes procedures for the filing, investigation, and disposition of complaints.

One court has explained:

> "An antidiscrimination statute such as Chapter 151B reflects the legislature's balancing of competing interests. Employees are protected against certain types of discharge. Employers are protected from unnecessary litigation by a relatively short statute of limitations, *see* ch. 151B § 5 (six months), and a mandatory conciliation process . . . ."

*Crews* v. *Memorex Corp.*, 588 F. Supp. 27, 29 (D. Mass. 1984).

Chapter 151B provides "two largely independent avenues for redress of violations of the antidiscrimination laws of the Commonwealth, one through the MCAD . . . and the other in the courts." *Christo* v. *Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 817 (1988). However, under G. L. c. 151B, § 9, a person claiming discrimination "may maintain a civil action only if she has previously filed a timely complaint with the [MCAD] and ninety days have passed (or a commissioner has assented to an earlier filing)." *Id.* at 816. "Resort to the courts is not available for a complaint of discrimination within the jurisdiction of the MCAD unless the person claiming to have been the object of unlawful discrimination

first makes a timely complaint to that agency." *Cherella* v. *Phoenix Technologies Ltd.*, 32 Mass. App. Ct. 919, 919 (1992), citing *Melley* v. *Gillette Corp.*, 19 Mass. App. Ct. 511, 512-513 (1985), *S.C.*, 397 Mass. 1004 (1986). *Sereni* v. *Star Sportswear Mfg. Corp.*, 24 Mass. App. Ct. 428, 430 (1987).

In *Brunson* v. *Wall*, 405 Mass. 446, 452 (1989), we concluded that G. L. c. 151B did not provide an employee with the option to proceed with a de novo judicial hearing under § 9 after a final decision of the MCAD pursuant to § 6. "By providing for judicial review of MCAD decisions, and by foreclosing agency action once a party has sought a judicial remedy pursuant to § 9, the Legislature signaled its intent that the parties would be bound by an MCAD decision, subject only to judicial review." *Id.*

In view of the carefully crafted procedures of c. 151B, it is unlikely that, in adopting the equal rights act, the Legislature intended to create a parallel and competing alternative to dealing with the problem of employment discrimination in the Commonwealth. The statutory language supports this conclusion.

Section 9 of G. L. c. 151B provides in part:

> "as to acts declared unlawful by section four, the procedure provided in this chapter shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.
>
> "Any person claiming to be aggrieved by a practice made unlawful under this chapter . . . or by any other unlawful practice within the jurisdiction of the commission, may, at the expiration of ninety days after the filing of a complaint with the commission, or sooner if a commissioner assents in writing . . . bring a civil action for damages or injunctive relief or both in the superior or probate court . . . ."

The suggestion that the phrase "while pending" of § 9 means that c. 151B is the exclusive remedy solely for actions filed with the MCAD is incorrect. This interpretation ignores the legislative intent to subject all discrimination claims to some administrative scrutiny. In essence the words "while pending" are an acknowledgment that a complaining employee must first file his claim with the MCAD, and that the pending claim may be decided administratively with judicial review of the final administrative decision. If the employee opts for judicial determination of his claim, he may do so only ninety days after filing the claim (or sooner with permission) in which case the administrative process terminates, and the claim is no longer pending before the MCAD. Thus the election to pursue a claim of discrimination in court applies only after the first step of filing with the MCAD.

Our appellate decisions have consistently applied this view of the exclusivity of c. 151B remedies. In an opinion whose analysis and conclusion we have adopted, the Appeals Court decided that a new common law remedy for employment discrimination should not be created where G. L. c. 151B applies. See *Melley* v. *Gillette Corp.*, 397 Mass. 1004 (1986). The Appeals Court reasoned that, "where, as here, there is a comprehensive remedial statute, the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme. Not only would the legislative preference for an administrative solution be circumvented, but serious problems would be posed as to the extent of the remedy provided." *Melley* v. *Gillette Corp.*, 19 Mass. App. Ct. 511, 513 (1985).

More recently, the Appeals Court examined the relationship between G. L. c. 151B and G. L. c. 12, §§ 11H and 11I (1992 ed.). In *Mouradian* v. *General Elec. Co.*, 23 Mass. App. Ct. 538 (1987), a plaintiff alleged that he was wrongfully terminated because of age discrimination in violation of c. 151B, § 4 (1B), and c. 12, §§ 11H and 11I. The plaintiff had filed a complaint with the MCAD that was dismissed because it was not filed within the relevant limitations peri-

ods prescribed by c. 151B. The *Mouradian* court, *id.* at 543, opined:

"There may be a case in which the termination of an at-will employee could give rise to a tenable complaint seeking relief under G. L. c. 12, §§ 11H and 11I. This is not such a case, as the only 'right[ ] secured by the . . . laws of the commonwealth' (the operative words of c. 12, § 11H, in this instance) is the right which could have been enforced under the procedures established by c. 151B. In the circumstances, G. L. c. 12, §§ 11H and 11I, do not create an independent right to vindicate an alleged wrong which might have been the subject of investigation and possible vindication under G. L. c. 151B, were it not for [the plaintiff's] delay."

The decisions in *O'Connell* v. *Chasdi*, 400 Mass. 686 (1987), and *Comey* v. *Hill*, 387 Mass. 11 (1982), are not to the contrary. In *O'Connell* v. *Chasdi, supra* at 693, where c. 151B was inapplicable, the court decided that its exclusivity provisions do not preclude an independent claim of a violation of an employee's equal protection rights under art. 1 of the Declaration of Rights, as amended by art. 106 of the Amendments. In *Comey* v. *Hill, supra* at 20, we ruled that an employee was not foreclosed by c. 151B from raising a tort claim under common law principles established prior to adoption of c. 151B.

We therefore conclude that, where applicable, G. L. c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections, and that the plaintiff's failure to adhere to the requirements of G. L. c. 151B required the dismissal of his complaint.

*Judgment affirmed.*