**Christine M. VARAD, Plaintiff,**

v.

**Edward J. BARSHAK, as Chairman of the Massachusetts Board of Bar Examiners, Defendant.**

No. CIV.A.2002–11311–RB.[1]

United States District Court,
D. Massachusetts.

May 15, 2003.

---

1. With the parties' consent, this case has been referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

---

Christine M. Varad, Scituate, MA, Pro se.

Maite A. Parsi, Attorney General's Office, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON MOTION BY EDWARD J. BARSHAK FOR SUMMARY JUDGMENT (# 24)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On July 1, 2002, pro se plaintiff Christine M. Varad ("Varad" or "the plaintiff") filed a complaint naming as the sole defendant Edward J. Barshak ("Barshak") in his capacity as the Chairman of the Massachusetts Board of Bar Examiners. The plaintiff claims to be a qualified person with a disability within the meaning of the Americans with Disabilities Act of 1990 ("ADA") and that, as such, she was entitled to certain accommodations with respect to the essay portion of the February 2002 Massachusetts Bar Examination. Varad contends that the defendant's failure to afford her such accommodations based upon her oral request made in January, 2002, constituted violations of the ADA, Article 114 of the Articles of Amendment to the Massachusetts Constitution, and Massachusetts General Laws chapter 93 § 103.

Barshak filed a motion for summary judgment (# 22) and a memorandum in support (# 24) thereof in mid-January, 2003, seeking the entry of judgment as a matter of law on all of the plaintiff's claims. On January 31, 2003, Varad timely submitted a memorandum in opposition (# 25) to the dispositive motion. Oral argument on the summary judgment motion was heard on February 24, 2003, and the matter was taken under advisement. With the record now complete, the motion for summary judgment is poised for resolution.

### II. The Facts

Unless otherwise noted, the recited facts are not the subject of dispute. Varad is a 2001 graduate of New England School of Law. (# 25, Exh. B ¶ 2) In July of 2001 and February of 2002 she took the examination for admission to the bar of the Commonwealth of Massachusetts; she failed both exams. (# 25, Exh. B ¶¶ 7, 18, 26)

The Board of Bar Examiners ("BBE") is the entity in the Commonwealth responsible for the administration of the bar examination and for "reporting to the Supreme Judicial Court the character, aquirements and qualifications of those petitioning for admission to the Bar." (# 24, Exh. A ¶ 5) The Massachusetts bar examination is administered over a two day period. On the first day, the Multistate Bar Examination ("MBE") consisting of 200 multiple choice questions is given. The second portion of the exam on day two is "ten questions based on statements of facts, each calling for an 'essay' type answer." (# 24, Exh. A ¶¶ 12–13)

The BBE provides information and application materials to bar applicants. The application materials for the July 2001 bar examination included a document entitled "Notice and Information Regarding the Next Bar Examination, July 2001 Examination." (# 24, Exh. A ¶ 6 and Exh. A–2) This document supplied information regarding, among other things, the place and time of the examination, the filing of com-

pleted applications, and eligibility requirements for taking the bar examination. (# 24, Exh. A ¶ 10 and Exh. A–2) Also included was a section entitled "SPECIAL ACCOMMODATIONS" which read as follows:

> ***All requests*** for taking the Massachusetts Bar Examination under non-standard conditions must be ***in writing*** and submitted to the ***Board of Bar Examiner, 77 Franklin St., Boston, MA 02110***. Upon receipt of written request, the Board will issue to the applicant Special Accommodation Petition forms. These forms must be completed by the applicant and professionals to provide details and documentation relating to a disability and shall be returned to the Board 75 days prior to the date of the examination (***May 14, 2001***). Written requests to type the essay portion of the examination will be permitted to persons with disabilities and then to others if seating is available. **DO NOT SEND SPECIAL ACCOMODATIONS (sic) OR SPECIAL ACCOMODATIONS (sic) FORMS TO THE COURT.**

Memorandum In Support # 24, Exh. A at Exh. A–2 (emphasis in original). It is uncontested that the plaintiff received this information along with the application form and instructions for first time applicants. (# 24, Exh. A ¶¶ 7–8, 10 and Exh. A–2) While Varad properly completed and filed all of the appropriate forms to sit for the July 2001 bar examination, she did not submit a written request or fill out a Special Accommodation Petition form. (# 24, Exh. A ¶ 11)

Some three weeks prior to the bar examination the BBE sent all applicants a document entitled "Suggestions on Writing the Essay Examination" which document was also "included in the packet given to test takers at the time of the [e]xamination." (# 24, Exh. A ¶ 16 and Exh. A–4) In addition to suggesting tips on how to formulate and draft answers for the essay portion of the bar exam, this document also explained that "the purpose of the bar examination is to test your ability to think and express yourself as a lawyer." (# 24, Exh. A ¶ 16 and Exh. A–4) The document further reads:

> The Board presumes that you have completed your law studies, under competent instructors, and have passed examinations given by them. It does not challenge the results of your law school course. It is testing your ability to apply what you have already learned to the facts of the problems such as those which might arise in your practice, and which, in some instances, involve more than one field of law. The value of an answer depends not only upon your conclusions, but even more upon the evidence it displays of the elements mentioned above.

Memorandum In Support # 24, Exh. A and Exh. A–4.

The plaintiff took the two day bar examination in July, 2001, and completed the entire examination. (# 24, Exh. A ¶ 18) In a form letter dated November 2001, Barshak informed Varad that she "did not obtain a total combined scaled score of 270.00 or greater, the passing score, on the July 25–26, 2001 Massachusetts law examination." (# 24, Exh. A ¶ 18 and Exh. A–5) In response, by letter dated November 3, 2001, the plaintiff requested that the BBE sent her copies of her essay answers and also inquired as to the existence of "any designated mechanism by which essay results may be challenged." (# 24, Exh. A ¶ 19 and Exh. A–6)

In a November 5, 2001 letter the Executive Director of the BBE, Elaine Vietri (hereinafter "Vietri"), advised Varad that "[t]he Board of Bar Examiners has reviewed our calculations of your scores and

found them to be accurate and complete, all ten essays were graded and included in the calculated essay score." (# 24, Exh. A ¶ 20 and Exh. A–7) The letter further stated that "the Rules of the Board of Bar Examiners do not allow for a rereading of [plaintiff's] essay answers of the July 2001 bar examination" because Varad's total scaled score was "below the *265* necessary for a reread." (# 24, Exh. A ¶ 20 and Exh. A–7)(emphasis in original)

In due course the plaintiff applied to take the February 2002 examination for admission to the bar of the Commonwealth of Massachusetts. (# 24, Exh. A ¶ 21 and Exh. A–9) The reapplication packet included information similar to that sent with respect to the July 2001 bar exam, including a section entitled "nonstandard testing" delineating the procedures for requesting a special accommodation.[2] (# 24, Exh. A ¶ 22 and Exh. A–10) Specifically the pertinent parts of this section read:

> If you have a disability that will require special assistance or accommodations on the bar examination and have not previously been granted accommodations, you must complete and file the Special Accommodations Petition forms.... The applicant and professionals must complete these forms to provide the Board with details and documentation relating to the disability.

The Special Accommodations Petition shall be returned to the Board no later than 75 days prior to the date of examination (December 17, 2001)...

Memorandum In Support # 24, Exh. A ¶ 22 and Exh. A–10 (emphasis in original). The plaintiff did not request any accommodations by December 17, 2001 or file a special accommodations petition with reference to the February 2002 examination. (# 24 ¶ 23)

On January 18, 2002, Varad spoke with Vietri at the BBE by telephone and requested an accommodation for a handwriting disability.[3] (# 25, Exh. B ¶ 9) According to the plaintiff, her request was denied. (# 25, Exh. B ¶ 10) She consequently took the February 2002 examination without any accommodations and wrote out all responses to the ten essay questions. (# 24, Exh. A ¶ 25 and Exh. A–25)

The BBE informed the plaintiff in May of 2002 that she had not attained the required passing score on the February examination. (# 24, Exh. A ¶ 26 and Exh. A–13) In a letter dated May 2, 2002, the plaintiff wrote to Chief Justice Margaret Marshall of the Massachusetts Supreme Judicial Court ("SJC") seeking a hearing pursuant to S.J.Ct. Rule 3:01 § 5.3 with regard to her bar admission. (# 24, Exh. A ¶ 27 and Exh. A–14 [4]) In a May 8, 2002

---

2. Varad also again received the document entitled "Suggestions on Writing the Essay Examination" twice before the exam was administered. (# 24 ¶ 24)

3. The plaintiff asserts that she "had no notice of [her] need for a disability accommodation prior to January 18, 2002" and that the "Massachusetts Bar Exam testing documentation, packets, applications and special accommodations request forms and other accompanying information did not provide me with adequate notice of my need for a disability accommodation." (# 4 ¶¶ 11–12)

It is unclear precisely what Varad means by these statements. At the very least, she and

not the BBE, would have the knowledge of her "need" for a disability accommodation.

If Varad's complaint is that the BBE's notice was inadequate, her statement is hardly sufficient to raise a genuine issue of material fact on that issue since Varad fails to point to any evidence as to how or in what respect notice was inadequate.

4. The letter went on to say:

> I am requesting a hearing because I have an arm that was very seriously injured in an accident and as a result of that injury I have difficulty writing by hand. I did not take the Bar examination under any special

letter Varad informed the BBE that she had petitioned the SJC for "judicial review of the validity of the Board's actions in regard to its assessments of my acquirements and qualifications for admission as an attorney and to review the appropriateness of the Board's failure to provide accommodations for me as a test-taker on the essay portion of the Bar examination." (# 24, Exh. A ¶ 31 and Exh. A–16)

The plaintiff's May 2nd letter was referred by Chief Justice Marshall to the Deputy Administrative Assistant of the SJC, Robert S. Bloom (hereinafter "Bloom"). (# 24, Exh. A ¶ 28) In a letter dated May 9, 2002, Bloom replied to Varad that "[t]he court does not consider granting such hearings in cases where the applicant has not exhausted his or her remedies with the [BBE]. In your case, there is no indication in your letter that you made any formal request of the BBE." (# 24, Exh. A ¶ 29 and Exh. A–15) The letter further indicated that the plaintiff could not pursue a hearing under Rule 3:01 § 5.3 "without a written denial of relief from the [BBE]." (# 24, Exh. A ¶ 29 and Exh. A–15)

Also on May 9th Barshak answered the plaintiff's May 8th letter to the BBE, noting "that the BBE's 'records do not indicate that [she] requested special accommo-

dations for either of the two exams that [she] failed.'" (# 24, Exh. A ¶ 32) Further on May 9th Varad sent two more letters to the BBE, one in which she requested a copy of her essay answers from the February 2002 bar examination and a second in which she wrote:

> Following Mr. Bloom's direction, please consider this letter a formal request that relief be granted to me by the Board of Bar Examiners in regard to it's (sic) failure to accommodate me as a test-taker...
>
> Where I am not aware of any remedies yet available, I would like to suggest that one possible remedy might be a re-read of the essays already submitted under a grading standard that would function as an accommodation for an impaired test-taker. Another suggestion would be that the Board of Bar examiners retest me through the employment of a multiple choice test as against the unfair standard imposed by the written essay testing format. I believe that Mr. Bloom's suggestion of engaging the use of a person to write my answers for me would only function to impair my ability to fully answer an essay question and would continue to

accommodations and I believe that a low essay score was the result of the extremely poor legibility of my handwriting. It is not within my physical power to alter the poor quality of the handwriting and under the test conditions as presented by the essay portion of the Bar examination it becomes increasingly painful for me to write by hand. I have never considered myself to be disabled, and yet, the Bar exam is the rare situation in which I have no power to change the physical problem that is causing a poor test result on the essay portion of the examination.

I am being tested functioning under handicapped conditions not experienced by all other test takers. I believe that fairness would require a hearing on this issue. I am

requesting that the Court schedule a hearing where I could have an opportunity to provide a physician's statement regarding the arm and the injury as it affects my abilities in regard to handwriting. It is my belief that re-taking the examination under the same test conditions would only produce the same result. I would ask the Court to allow a re-reading of the essay portion of my examination to ascertain if poor handwriting caused the resulting poor score on the essay portion of the exam. In the alternative, I would request that the Court allow me to retake the essay portion of the Bar examination under conditions that would be fair to me as a test taker. Memorandum In Support # 24, Exh. A ¶ 27 and Exh. A–14.

unfairly assess my acquisition and qualifications for admission.

Memorandum In Support # 24, Exh. A ¶ 34 and Exh. A–17.

In response to a May 10th telephone call from Varad, Barshak wrote that he had nothing further that he could tell her. (# 24, Exh. A ¶ 35 and A–18) Copies of all the BBE correspondence with the plaintiff was forwarded to the SJC. (# 24, Exh. A ¶ 36)

In a letter to Varad dated May 28, 2002, Chief Justice Marshall wrote that

> I have reviewed your correspondence with the Board of Bar Examiners and with staff of this court. Upon consideration of all of the materials, I have concluded that your request for hearing must be denied for failure to state a claim upon which relief can be granted.
>
> As you know, if you decide to take a future Massachusetts bar examination, you can request that the Board of Bar Examiners provide special accommodations in order to alleviate your test-taking problem.

Plaintiff's Memorandum # 25, Exh. W.

On June 7, 2002, the plaintiff filed a "Request for a Stay of the Dismissal of the Petition of [Plaintiff] for Admission to Practice as an Attorney..." with the SJC. (# 25, Exh. C) Treating Varad's filing as a motion for reconsideration of her May 30th decision, Chief Justice Marshall Court denied the request. (# 25, Exh. U)

### III. The Summary Judgment Standard

Summary judgment is "a device that 'has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways.'" *Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir.1999) (quoting *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991)). The party moving for summary judgment "bears the initial burden, which may be discharged by pointing to the absence of adequate evidence supporting the nonmoving party's case." *Michelson v. Digital Financial Services*, 167 F.3d 715, 720 (1st Cir.1999). After the moving party has met its burden, "the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Michelson*, 167 F.3d at 720.

When considering whether to grant summary judgment, the Court must determine whether:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In making this assessment, the Court must "accept all reasonable inferences favorable to the nonmovant." *Mullin*, 164 F.3d at 698; see also *Feliciano v. State of Rhode Island*, 160 F.3d 780, 788 (1st Cir. 1998); *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998); *Dykes v. DePuy, Inc.*, 140 F.3d 31, 33 (1st Cir.1998).

A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine," the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; see also *Fajardo Shopping Center, S.E., v. Sun Alliance Insurance Company of Puerto Rico, Inc.*, 167 F.3d 1, 7 (1st Cir.1999) ("[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party"); *De–Je-*

*sus–Adorno v. Browning Ferris of Puerto Rico,* 160 F.3d 839, 841–42 (1st Cir.1998) ("A trialworthy issue exists . . . [if] the evidence is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.' "); Feliciano, 160 F.3d at 784; *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 158 (1 Cir., 1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In weighing whether a factual dispute is "material," the Court must examine the substantive law of the case, because "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; see also *De–Jesus–Adorno,* 160 F.3d at 841–42 ("A trialworthy issue exists if the evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law"); *Fajardo Shopping Center, S.E.,* 167 F.3d at 7 (citing *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993)). "Thus the substantive law defines which facts are material." *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir. 1996) (citing *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505).

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. See *Mullin,* 164 F.3d at 698 (quoting *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)) ("Its essential role is to 'pierce the boilerplate of the pleadings and assay the parties proof in order to determine whether trial is actually required.' "). Rather, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. Discussion

■ The merits of the plaintiff's claim under Title II of the ADA shall be the first to be addressed. Although the defendant advances several reasons why summary judgment should be granted, only one argument need be discussed.[5]

In Massachusetts the BBE is a creature of statute. See Mass. Gen. L. c. 221 § 35. The power with which the BBE is endowed is also granted by statute:

> Said board may, subject to the approval of the supreme judicial court, make rules with reference to examinations for admission to the bar and the qualifications of applicants therefor, and

---

**5.** The defendant has not raised the Eleventh Amendment as a basis for seeking judgment as a matter of law given the uncertainty of the law on this point. Indeed, as recent events indicate, the law remains in flux. On April 7, 2002, the Supreme Court dismissed the writ of certiorari that had been granted in the Ninth Circuit case addressing the sovereign immunity issue. See *Medical Board of California v. Hason,* — U.S. ——, 123 S.Ct. 1779, 155 L.Ed.2d 508 (2003). As noted in the defendant's papers, the First Circuit has withdrawn a panel decision discussing the interplay of the Eleventh Amendment and Title II of the ADA (*Kiman v. New Hampshire Department of Corrections,* 301 F.3d 13 (1st Cir. 2002)), granted the petition for rehearing en banc (*Kiman v. New Hampshire Department of Corrections,* 310 F.3d 785 (1st Cir.2002)) and then stayed further proceedings in light of the grant of certiorari in the Hason case. *Kiman v. New Hampshire Department of Corrections,* 311 F.3d 439 (1st Cir.2002). To date the First Circuit has taken no further action in the Kiman case following the April 7th dismissal of the grant of certiorari in Hason.

determine the time and place of such examinations, and conduct the same; provided, that any applicant for admission to the bar who is a graduate of a college or who has complied with the entrance requirements of a college, or who has fulfilled for two years the requirements of a day or evening high school or of a school of equal grade, shall not be required to take any examination as to his general education; and provided, further, that no applicant for an examination for admission to the bar shall be restricted as to the number of times he may take such an examination...

Mass. Gen. L. c. 221 § 36.

Although great deference is accorded to BBE decisions regarding the qualifications of applicants, the SJC "retain[s] the inherent and exclusive jurisdiction over any decision to admit an attorney to the practice of law in this Commonwealth." *Wei Jia v. Board of Bar Examiners,* 427 Mass. 777, 782, 696 N.E.2d 131, 136 (1998). See also Mass. Gen. L. c. 221 § 37; In the *Matter of Prager,* 422 Mass. 86, 89, 661 N.E.2d 84, 91 (1996) ("While deference is given to the decision of the board, this court retains ultimate authority to decide a person's fitness to practice law in the Commonwealth.").

The BBE requires that those applicants who claim to have a disability which impacts their ability to sit for the bar examination request an accommodation in writing seventy-five days prior to the examination date. The timing of such requests affords the BBE the opportunity reasonably to assess the applicant's disability and arrange for an appropriate accommodation. There is no dispute that "[t]he BBE routinely provides reasonable accommodations to applicants who submit

timely and complete Special Accommodations forms documenting the need for an adjustment of testing conditions." (# 24, Exh. A ¶ 39)

Title 42 U.S.C. § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Assuming without deciding that Varad is, in fact, a "qualified individual with a disability," her claim must nevertheless fail as she has not demonstrated that the BBE has excluded her from participation in the bar examination or that she was denied the benefits of the BBE's services by reason of her disability.

The simple fact is that the plaintiff did not follow the instructions that she admittedly had received on two occasions, i.e., prior to both the July 2001 and the February 2002 bar examinations, from the BBE.[6] She never made a written request to be accommodated for a disability with regard to the February 2002 bar examination. She never completed the Special Accommodation Petition forms "to provide details and documentation relating to a disability," including an Authorization and Release Form. She never had the Professional Declaration completed by a treatment professional on her behalf. The Professional Declaration, Form D of the Petition for Special Testing Accommodations,

> [m]ust be completed by applicant's treatment specialist(s) describing the type and extent of the handicap or disability, and specifying the effect of the disability or handicap on an otherwise qualified applicant's ability to be examined.

---

**6.** Varad does not contend that her purported disability in any way affects her ability to

read, comprehend and follow written instructions.

Professional declarations based on examinations or tests more than three years prior to the application may be denied for that reason alone. Therefore, it is advisable to present professional declarations based upon declarations based upon more recent examination or tests. You may be required to submit to independent diagnostic testing at your expense by a doctor of the Board's choice. You will be advised if this will be required.

Memorandum In Support # 24, Exh. A ¶ 23 and Exh. A–11.

It is true that Varad did make an oral request for accommodation in a telephone call to the BBE on January 18, 2002, more than a month after the December 17, 2001 deadline to file a written request. However, that verbal request was too little, too late, leaving the BBE without the time or the information necessary to make a reasoned judgment with respect to the alleged disability. Despite her best efforts, Varad cannot somehow transform her own "failure to follow instructions and submit timely requests" (# 24 at 15) into a failure by the BBE to provide an accommodation as required by the ADA.[7]

To summarize, the plaintiff was given notice of the procedures for requesting an accommodation when she applied to take both the July 2001 and the February 2002 bar examinations. Varad completed all ten essay answers on the July 2001 examination and never mentioned a need for an accommodation. When plaintiff reapplied for the February 2002 examination, she did not submit a written request for an accommodation, but only made an oral request on January 18, 2002, well past the

December 17, 2001 deadline. Varad again completed all ten essay answers on the February 2002 exam. Based on these facts, the SJC determined that Varad had failed to state a claim for which relief can be granted, essentially determining that the plaintiff was not entitled to a hearing until all her available remedies had been exhausted, namely, formally requesting an accommodation pursuant to the BBE's rules. On these facts, Varad has not made out a claim under Title II of the ADA because she has proffered no evidence to show that she has been excluded from participation in or denied the benefits of the defendant's services by reason of a disability.

▇ The remaining claims require minimal discussion and so shall be addressed in short order. Title III of the ADA, 42 U.S.C. §§ 12181–12189, prohibits "discrimination...[in] public accommodations provided by private entities." *Olmstead v. L.C. by Zimring*, 527 U.S. 581, 589, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). Since the BBE is a public, not a private, entity, Title III of the ADA is simply inapplicable, and the plaintiff's claim under that part of the statute must fail.

▇ Finally, the plaintiff's claims under Massachusetts General Laws chapter 93 § 103 and Article 114 of the Massachusetts Constitution shall be addressed in tandem. In relevant part § 103 provides that

> [a]ny person within the commonwealth, regardless of handicap or age... shall, with reasonable accommodation, have the same rights as other persons... to the full and equal benefit of all laws and proceedings for the security of persons

---

7. The plaintiff's reliance on 29 C.F.R. Part 1630 (REGULATIONS TO IMPLEMENT THE EQUAL EMPLOYMENT PROVISIONS OF THE AMERICANS WITH DISABILITIES ACT) is inapposite given that the purpose of Part 1630 is "to implement **[T]itle I** of the Americans with Disabilities Act (42 U.S.C. 12101, et seq.)." 29 C.F.R. § 1630.1. (emphasis added)

and property, including, but not limited to, the rights secured under Article CXIV of the Amendments to the Constitution.

Mass. Gen. L. c. 93 § 103.

Specifically referenced in § 103, Article 114 of the Massachusetts Constitution reads: "ART. CXIV. No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth." MA CONST Amend. Art. 114.

The defendant argues, correctly, that Varad's claims are barred by the exclusivity provision of Mass. Gen. L. c. 151B. When examining "the relationship between G.L. c. 151B...and G.L. c. 93, § 102 and § 103 (equal rights act)", the SJC had occasion to explain that:

> The plaintiff contends that the equal rights act provides alternative remedies for employment discrimination in concert with c. 151B. We do not agree. We base our decision on the language of c. 151B, legislative intent, and our precedents interpreting its scope. Chapter 151B creates an administrative procedure for the enforcement of antidiscrimination statutes of the Commonwealth. As this court has stated, 'The clear purpose of G.L. c. 151B is to implement the right to equal treatment guaranteed to all citizens by the constitutions of the United States and the Commonwealth.'

*Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 582, 631 N.E.2d 555, 557 (1994) (citations omitted).

**8.** In Charland, the plaintiff relied on that portion of Mass. Gen. L. c. 93 § 103, which guarantees equal treatment regardless of "age." In the instant case, Varad relies on that portion of the same statute which guarantees equal treatment regardless of "handi-

Chapter 151B mandates that plaintiffs must bring their actions to the Massachusetts Commission Against Discrimination ("MCAD") within six months of the alleged discriminatory act. In the administrative scheme, "the election to pursue a claim of discrimination in court applies only after the first step of filing with the MCAD." *Charland*, 417 Mass. at 585, 631 N.E.2d at 558. Since there is nothing in the record to indicate that Varad filed a timely complaint with the MCAD, a fortiori she cannot now pursue her chapter 93 § 103 and Article 114 claims in court.[8]

### V. Conclusion

For the reasons stated, it is ORDERED that the Motion By Edward J. Barshak For Summary Judgment (# 24) be, and the same hereby is, ALLOWED. Judgment shall enter for the defendant.

cap." The holding of the Charland case is applicable regardless of which guarantee forms the basis of the relief sought. Whether a claim is based on age or handicap, filing with the MCAD is a condition precedent to bringing suit.