Lauriat, J.
Claire Cedrone (“Cedrone”) filed this action for alleged discrimination on the basis of hand *326 icap by her former employer, American Express One Travel Services, Inc. (“American Express”) and her former supervisor, Kathleen Fitzpatrick (“Fitzpatrick”). Specifically, Cedrone asserts violations of G.L.c. 15 IB, §4(16) (Count I), G.L.c. 93, §103 (Count II), G.L.c. 152, §§75A, 75B (Count III) and intentional interference with advantageous contractual relations (Count IV). The defendants have moved for summary judgment on all counts. For the following reasons, summary judgment must be allowed In part and denied in part.
FACTUAL BACKGROUND
The facts, as revealed by the summary judgment record, and viewed in the light most favorable to the non-moving party, are as follows.
In August 1997, Fitzgerald hired Cedrone as a corporate travel counselor for American Express in the Burlington, Massachusetts office. As part of the application process Cedrone filled out and signed a form containing the following provision:
I understand that if I am employed, my employment will not be for a definite duration and can be terminated at any time by either myself or my employer. I further understand that none of the company’s personnel policies should be construed as a contract or as a guarantee of continued employment. No representative of TRS, American Express Company or any of their affiliates, other than the Chairman of TRS or his designee, has authority to enter into or approve any agreement for employment for any specified period of time or to approve any agreement contrary to the foregoing.
In March 1999, Cedrone requested time off to undergo surgery on her hand and elbow. Fitzgerald met with Cedrone to discuss salary continuation benefits. When Cedrone mentioned workers’ compensation benefits, Fitzgerald corrected Cedrone and told her to take Family Medical Leave Act (“FLMA”) time.[1] Fitzgerald gave Cedrone the paperwork to apply for FLMA time and told Cedrone who to contact in the human resources department to get detailed information.
Cedrone underwent surgery on March 17, 1999. She returned to work in June 1999, with a reduced schedule of five four-hour days each week. While at work, Cedrone also had rest times to ice her arm. At some point, American Express provided an ergonomic workstation for her. She worked three to six months on this reduced schedule, then increased her hours to three four-hour days and two six-hour days a week. After three to six months of this schedule, Cedrone increased her schedule to three six-hour days and two eight-hour days a week.
On March 20, 2000, Cedrone’s doctor faxed her a note advising her to reduce her schedule to five six-hour days per week. On Friday, March 25, 2000, Cedrone gave the doctor’s note to her direct supervisor, Sarah Lewis (“Lewis”) and left the office. Fitzgerald called Cedrone and said that Cedrone had upset Lewis, abandoned her job and that they would have to talk next week. On April 4, 2000, Cedrone’s position was terminated.[2] American Express said that it could not accommodate Cedrone’s request for further reduced hours because of the volume of business and the strain on the other employees in the Burlington office.
Cedrone’s doctor diagnosed her as “totally disabled” on April 10, 2000. In a letter dated April 17, 2000, Fitzpatrick informed Cedrone that Cedrone had exhausted her FMLA benefits. The letter informed Cedrone that her salary continuation benefits would extend to April 21, 2000, and that she would be placed on unpaid leave as of April 22, 2000. The letter also stated that Cedrone’s reinstatement rights were no longer guaranteed and that she could apply for another position at American Express within thirty days of her doctor releasing her to work.
On April 18, 2000, Cedrone applied for workers’ compensation benefits, which she received from June 2000 to March 2003.
In December of 2001, American Express closed its Burlington office because of the significant downturn in travel following the September 11 terrorist attacks. There were opportunities for some of its employees to transfer to other locations. These transfers were based on a multiple incumbency policy, which included seniority as one factor. Cedrone would not have been eligible for a transfer. The Acton and Chelmsford offices subsequently closed; and in August 2003, Fitzpatrick was laid off.
On June 20, 2000, Cedrone filed a charge of discrimination with the Massachusetts Commission Against Discrimination (“MCAD”). On November 28, 2001, the MCAD issued a Final Disposition finding no probable cause; after a hearing, the decision was upheld on July 19, 2002.
Cedrone filed this complaint on November 22,2002.
RULINGS OF LAW
The court will grant summary judgment, pursuant to Mass.R.Civ.P. 56, where no genuine issues of material fact exist and where the moving party is entitled to judgment as a matter of law. Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). The moving party bears the burden of demonstrating both that there is no triable issue of fact and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Kourouvacilis, 410 Mass. at 714; Flesner v. Technical Comm. Corp., 410 Mass. 805, *327 809 (1991). “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Count I: Violation of G.L.c. 151B, §4(16)
To succeed on a claim for employment discrimination on the basis of handicap, Cedrone must demonstrate that she is handicapped within the meaning of the statute; that she can perform the essential functions of the job without accommodation, or with a reasonable accommodation from the employer that does not pose an undue hardship on the employer; and that her handicap was the cause of the allegedly unlawful discriminatory action. See Cargill v. Harvard University, 60 Mass.App.Ct. 585, 586 (2004), citing New Bedford v. Massachusetts Comm’n. Against Discrimination, 440 Mass. 450, 461-62 (2003).
The defendants have moved for summary judgment of Cedrone’s claim for violation of G.L.c. 15 IB, §4(16) on the basis that Cedrone’s request to reduce her schedule to five six-hours days a week for an indefinite period of time was not a reasonable accommodation because it constituted creating a new, part-time position and placed an undue hardship on the other Burlington employees.
While an employer is under no obligation to create a new position for an employee requesting reasonable accommodation, Russell v. Cooley Dickenson Hosp., 437 Mass. 443, 454 (2002), Massachusetts courts have not decided whether reduced hours for an indefinite period of time constitute a new position.[3] In Russell, the court held that c. 151B, like the Americans with Disabilities Act, did not require an employer to provide indefinite or open-ended leave. Russell, 437 Mass. at 455-56. Unlike Cedrone, the plaintiff in Russell desired a full-time leave of absence for an indefinite period. Id. at 448.
Summary judgment is not appropriate on this claim because material issues of fact exist as to the reasonableness of Cedrone’s request for indefinite part-time work, whether Cedrone could perform the essential function of her job while working a reduced schedule and whether Cedrone’s reduced schedule constituted an undue hardship on American Express.
For these reasons, the defendants’ motion must be denied as to Count I.
Count II: Violation of G.L.c. 93, §103
The defendants correctly contend that Cedrone is precluded from bringing a claim under G.L.c. 93, §103 (the Massachusetts Civil Rights Act) because she has asserted a claim under G.L.c. 151B. See Cargill, 60 Mass.App.Ct. at 604. “(W]here applicable, G.L.c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections.” Id., citing Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994). So long as a plaintiff may bring an action under G.L.c. 15 IB, she has no viable claim under G.L.c. 93, §103. Cargill, 60 Mass.App.Ct. at 604.
Because G.L.c. 15 IB provides the exclusive remedy for the conduct alleged by Cedrone, the defendants’ motion for summary judgment of Count II must be allowed.
Count III: Violations of G.L.c. 152, §§75A, 75B
In Count III, Cedrone claims that American Express violated §§75A and 75B of the workers’ compensation statute, G.L.c. 152. She claims that American Express violated §75A by not affording her rehiring preference for jobs that existed at American Express that she could have performed. She claims that American Express violated §75B by discriminating against her for exercising her right to receive workers’ compensation benefits. Summary judgment is appropriate as to both of Cedrone’s chapter 152 claims.
A. Chapter 152, §75A
Section 75A provides:
Any person who has lost a job as a result of an injury compensable under this chapter shall be given preference in hiring by the employer for whom he worked at the time of compensable injury over any persons not at the time of application for reemployment employed by such employer; provided, however, that a suitable job is available.
The summary judgment record contains no evidence that Cedrone applied for any other employment at American Express, nor does it contain evidence that a suitable job was available at the time or that American Express filled available positions with persons who were not already employed by American Express.
In fact, Cedrone stated in her deposition that she never at any time asked to be hired back by American Express, nor did she ask to be hired over others. Cedrone Depo. at 109. She also stated that when she received a letter from Fitzpatrick listing other positions available at American Express, she called four managers and was offered full-time positions doing tasks different that those she had been doing as a corporate travel agent. Cedrone Depo. at 77-80. Cedrone declined the positions because she did not think she could perform their duties full-time. Id.
Additionally, Cedrone has offered no evidence contrary to Fitzpatrick’s statement that from April 2000 until the closure of the Burlington, Acton and Chemlsford offices, Fitzpatrick filled the few job openings available with existing American Express employees. Fitzpatrick Aff. at ¶ 3.
Because the summary judgment record contains no evidence of an essential element of Cedrone’s §75A claim, summary judgment on this claim is appropriate.
B. Chapter 152, §75B
Section 75B provides:
*328 No employer . . . shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter . . .
The defendants contend that summary judgment is appropriate on Cedrone’s claim for violation of this section because Cedrone will be unable to demonstrate that they took any adverse employment action against her because she exercised her workers’ compensation rights. Defendants cite the fact that Cedrone’s position with American Express was terminated on April 4, 2000, more than ten days before she filed for workers’ compensation benefits on April 18, 2000. Cedrone will be unable to prove at trial that her termination was motivated by retaliatory animus because she filed a workers’ compensation claim after the date of termination. Summary judgment is therefore appropriate as to this claim.
Count IV: Intentional Interference with Advantageous Contractual Relations[4]
To succeed on her claim for intentional interference with advantageous contractual relations against Fitzpatrick, Cedrone must demonstrate that she had a binding contract with American Express, that Fitzpatrick knowingly induced American Express to break that contract, that Fitzpatrick’s interference, in addition to being intentional, was improper in motive or means, and that Cedrone was harmed by Fitzpatrick’s actions. See G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991), citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990).
Cedrone’s claim must fail because she has presented no evidence indicating that she had a binding contract with American Express. In fact, the summary judgment record indicates that when she applied for her position at American Express in 1997, Cedrone signed a form expressly disclaiming that any contract had been entered. She acknowledged that she or American Express could terminate her employment at any time, and that only the chairman of the company or his designate could enter or approve a contract with her. Nothing in the record indicates such a contract was ever made. As Cedrone will be unable to demonstrate that she had a contract with American Express, summary judgment must be granted on her claim for intentional interference with advantageous contractual relations.
ORDER
For the foregoing reasons, the defendants’ Motion for Summary Judgment is DENIED as to Count I and ALLOWED as to Counts II, III and IV of the Complaint.

 In her deposition, Cedrone described the conversation:
[S]o the decision was made to operate in March ‘99. And when I talked to Kathleen Fitzpatrick and basically knew it was work-related, I said, “I need this operation. It would take time to heal. I’ll have a cast, stitches, therapy.” And I says, “With workers’ comp”—
She said, “No, no. Take FMLA.”
I didn’t even know what FMLA was at the time. And she printed out a B schedule . . . And I proceeded to apply for FMLA.
Cedrone Depo. at 25.

 The defendants claim-, and the MCAD found, that Cedrone was actually put on a paid leave of absence on this date and terminated later. For purposes of this motion, the defendants do not dispute the termination date.

 The court notes that the Americans with Disabilities Act specifically states that part-time or modified work schedules may be a reasonable accommodation. See 42 U.S.C. §1211(9){B).

In opposing the defendants’ motion, Cedrone relies on several cases addressing claims by employees for interference with advantageous business relations. The complaint, however, clearly states a cause of action for interference with advantageous contractual relations. As such, the cases she cites are inapplicable and summaiy judgment is appropriate.