Hopkins, Merita A., J.
This case involves a dispute between an employee and his former employer, alleging handicap discrimination in violation of G.L.c. 15IB, §4(16) (Count I), workers’ compensation retaliation in violation of G.L.c. 152, §§75A and B (Count II), and tortuous interference with an advantageous business relation (Count III). The case is currently before the court on defendants’ motion for summary judgment on Counts I, II, and III, and plaintiffs cross motion for partial summary judgment on Count I. Following a hearing on December 17, 2008, and a review of the record, both motions are DENIED.
BACKGROUND
The plaintiff, Timothy Hatch (“Hatch”), began working for the defendant Townsend Oil Company (“Townsend”) in 1993 as an oil burner service technician. One year prior to his employment with Townsend, Hatch had suffered a herniated disc but was able to recover after surgery. In May 2005, Hatch suffered another herniated disc while changing an overhead valve at a customer’s home. Hatch filed a claim for workers’ compensation, but was denied on the grounds of a herniated disc condition. After hiring counsel to dispute the denial, Hatch successfully established the compensability of his injuries pursuant to G.L.c. 152 and, in June 2005, he underwent surgery. In August 2005, Hatch’s doctor cleared him to return to work and he did so the following month. Hatch was able to perform the essential functions of his job without any need for special accommodations. Nevertheless, Hatch continued to experience pain in his side that, in January 2006, led him to make a further workers’ compensation claim. In Januaiy 2007, Hatch filed a workers’ compensation claim for loss of functioning and scarring.
Several months after returning to work, Hatch began receiving fewer overtime assignments. The parties dispute the reason for the reduction in overtime. The parties also dispute the reason for, but not the existence of, an increasingly strained relationship between Hatch and his immediate supervisor, Larry Bornstein (“Bornstein”), and between Hatch and the company president, Mark Townsend (“Mark”). Hatch claims the parties’ increasing animosity stemmed from *195 his pursuit of his workers’ compensation claims. The defendants claim Hatch was becoming an increasingly unreliable worker.
On March 12, 2007, Mark called Hatch into a meeting where he informed Hatch that he was being laid off. Shortly thereafter, Hatch brought this suit alleging that: (1) Townsend discriminated against him on the basis of his handicap: (2) Townsend retaliated against him for successfully pursuing his workers’ compensation claim; and (3) Mark intentionally interfered with Hatch’s advantageous business relations with Townsend. For the following reasons, the defendants’ motion for summary judgment is DENIED, and Hatch’s cross motion for partial summary judgment is also DENIED.
DISCUSSION
Standard of Review
Summary judgment shall be granted where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006). A fact is material if it would affect the outcome of the case. A dispute of fact is genuine if the evidence would permit a reasonable fact-finder to return a judgment for the non-moving party. Flesner v. Tech. Commc’ns. Corp., 410 Mass. 804, 809 (1991).
The moving party must demonstrate, “by reference to materials properly in the summary judgment record, unmet by countervailing materials” that the opposing party has no reasonable expectation of proving an essential element of her case. Carey, 446 Mass. at 278, citing Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party may meet its burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case against it, or by demonstrating that she has no reasonable expectation of proving an essential element of her case at trial. Flesner, 410 Mass. at 809. The opposing party may not defeat the motion merely by resting on the allegations and denials of her pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e); Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002).
Handicap Discrimination
G.L.c. 151B, §4(16) provides: “It shall be an unlawful practice [f]or any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment, or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer’s business.”
Section 1(17) of the same chapter defines “handicap” as “(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment...”
G.L.c. 152, §75B(1) provides: “Any employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodation, shall be deemed to be a qualified handicapped person under the provisions of chapter one hundred and fifty-one B.”
The parties dispute the proper interpretation of these statutory provisions. Hatch argues that chapter 152, §75B(1) establishes his status as a qualified handicapped person, as a matter of law, since he sustained a work-related injury and was capable of performing the essential functions of his job. In support of this position, he relies on Gilman v. C&S Wholesale Grocers, Inc., 170 F.Sup.2d 77 (D.Mass. 2001), in which the court held that “section 75B(1) ought to be read so as to deem individuals suffering work related injuries, without more, to be qualified handicapped persons under 151B, at least for the period of time that their status under the workers’ compensation law can fairly be read to influence their treatment by others.” Id. at 84. The court acknowledged that this interpretation of section 75B(1) “may provide an expanded definition for the term ‘qualified handicapped person,’ ” but ultimately concluded that such an outcome was mandated by the statutory language: “(section 75B(1)] contains no words which even imply that the injury must also ‘substantially impair a major life activity.’ The state legislature may well have assumed that an injury sufficient to qualify an individual for workers compensation was sufficient to impair that person’s ability to ‘work,’ one aspect of a major life activity.” Id. at 84-85.
The defendants argue that such an interpretation of section 75B(1) is absurd because it leads to the conclusion that any workplace injury would leave one “handicapped,” regardless of how minor the injury or how fully the employee had recovered. The defendants argue that the plaintiffs qualified handicap status should be analyzed pursuant to G.L.c. 15 IB, and thus, the defendant is not a qualified handicapped person, as a matter of law. In support, they cite Freire v. First Nat'l 1998 WL 1181751 (Mass.Super. 1998), in which the court ruled that “(s)ection 75B(1) does not transform all work-related injuries, regardless of how minor their effects, into handicaps protected under the Fair Employment Practices Act.” The court in Freire held that all persons alleging handicap discrimination must show that they meet the definition of “handicapped” as it is set forth in chapter 15IB, *196 §1(17). The Gilman court specifically disagreed with Freirés interpretation, but this court concurs with the reasoning and conclusion set out in Freire.
Here, the most harmonious interpretation of section 75B(1) with G.L.c. 15IB is that it provides the protections of the Massachusetts unlawful discrimination statute to workers’ compensation claimants. The intent of the Legislature was not to preclude plaintiffs from claiming handicap status merely because they had been injured on the job, and had been compensated for their injuries through the workers’ compensation laws. Section 75B(1) simply ensures that alleged handicaps resulting from work-related injuries will be analyzed in the same manner as all other alleged handicaps under chapter 151B, §1(17). This harmonious interpretation was previously applied by the Court when it reviewed whether a separate claim for employment discrimination could be made under the Massachusetts Equal Rights Act. See Charland v. Muzi Motors, Inc., 417 Mass. 580 (1994). As the Court observed in Charland, “(a]s a starting point for our analysis we assume, as we must, that the Legislature was aware of the existing statutes . . . and that if possible a statute is to be interpreted in harmony with prior enactments to give a consistent body of law.” 417 Mass. at 582-83. Additionally, to hold otherwise in the matter at hand, would be to provide greater protection to plaintiffs claiming discrimination on the basis of a handicap that resulted from a work-related injuiy as opposed to those whose handicaps resulted from injuries that were not work-related.
Moreover, the Legislature specifically incorporated G.L.c. 152, §75B(1) into G.L.c. 151B, which suggests that workers’ compensation claimants with a handicap discrimination claim, are to be analyzed in the same manner as all other alleged handicap persons pursuant to G.L.c. 15IB. The Court has recognized that “(c)hapter 15IB provides a detailed framework to protect the citizens of the Commonwealth against employment discrimination. It defines terms and prohibited practices and establishes procedures for the filing, investigation, and disposition of complaints.” Id. at 583. The Court in Charland further concluded that G.L.c. 151B was the exclusive remedy for employment discrimination in the absence of preexisting tort law or constitutional protections by stating that “(i]n view of the carefully crafted procedures of c. 15IB, it is unlikely that. . . the Legislature intended to create a parallel and competing alternative to dealing with the problem of employment discrimination in the Commonwealth.” Id, at 584. If the legislature intended greater protection to workers compensation claimants, the “qualified handicapped person” designation would be independent from G.L.c. 15IB. Therefore, to prevail on his handicap discrimination claim Hatch must demonstrate the traditional statutory criteria of (1) that he is handicapped, and (2) that he can perform the essential functions of the job with or without accommodation. The resolution of these issues involves questions of fact for the jury.[2]
Workers’ Compensation Retaliation
G.L.c. 152, §75B(2) provides: “No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter . . .” In order to establish a claim of workers’ compensation retaliation, Hatch must prove that “(1) he engaged in protected conduct, (2) he suffered adverse employment action, and (3) there was a causal connection between his conduct and the adverse action.” Benoit v. Technical Mfg. Corp., 331 F.3d 166, 177 (1st Cir. 2003). In this case, the defendants claim Hatch can establish no such connection since they had a legitimate business-related reason for terminating him. Specifically, the defendants contend “Hatch’s employment was terminated because, living in New Hampshire, he was more expensive to employ than others that lived closer to Townsend’s core place of business.” There is evidence on the record that supports this assertion. Most notably, another driver, David Dennison, was terminated for the same reason at around the same time.
On the other hand, there is also evidence on the record that Townsend continued to employ other drivers who lived even farther away from their assigned territories than Hatch did. Additionally, there is evidence that the increasingly strained relationship between Hatch and Bornstein was the result of Hatch’s repeated complaints that Townsend had not done enough to compensate him for his injuiy and residual pain. Thus, there is a genuine issue of fact as to whether Hatch was terminated for legitimate business reasons, or in retaliation for pursuing his workers’ compensation claims.
Tortious Interference with an Advantageous Business Relation
To succeed on his claim for intentional interference with an advantageous business relation, Hatch must show that: “(1) he had a business relationship for economic benefit with a third party, (2) Mark knew of the relationship, (3) Mark interfered with the relationship through improper motive or means, and (4) Hatch’s loss of advantage resulted directly from Mark’s conduct.” Kurker v. Hill 44 Mass.App.Ct. 184, 191 (1998). However, “(i]n the employment and discharge context, the law of this jurisdiction seeks to protect a corporate official’s freedom of action by requiring proof that the official acted with actual malice.” Alba v. Sampson, 44 Mass.App.Ct. 311, 314 (1998). To prove actual malice, Hatch must show he was fired “for a spiteful, malignant purpose, unrelated to the legitimate corporate interest.” Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476 (1992).
Mark argues that Hatch cannot prove actual malice since the decision to fire him was made by Bornstein, not Mark, and was taken because Hatch had become *197 unreliable and too expensive to employ. All these assertions are contested by Hatch, and he has presented evidence that Bornstein, at Mark’s direction, intentionally gave him undesirable jobs and cut back on his overtime in hopes that he would quit. As stated above, Hatch has also presented evidence that other employees who lived even farther away from their assigned territories were retained after he was fired. Therefore, there is a genuine issue of fact as to whether Hatch was fired for a legitimate business reason or simply out of malice.
ORDER
For the foregoing reasons, the defendants’ motion for summary judgment on Counts I, II and III is DENIED, and plaintiffs motion for partial summary judgment on Count I is DENIED.

A person may also establish handicapped status by showing that she had a record of being handicapped or was regarded by her employer as being handicapped. G.L.c. 15 IB, §1(17). However, to the extent there is any suggestion Hatch should qualify as a handicapped person on either of these grounds, the evidence on the record does not permit such a finding as a matter of law.